IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANK SERNA,

      Plaintiff,

      v.                                                                          Civ. No. 18-1142 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 22) filed July 3, 2019, in support of Plaintiff Frank Serna's Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying Mr. Serna's claim for disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. On August 21, 2019, Mr. Serna filed his Motion For Summary Judgment With Supporting Memorandum Of Law. Doc. 25. The Commissioner filed a Response on November 21, 2019 (Doc. 33) and Mr. Serna filed a Reply on December 12, 2019 (Doc. 34). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 15, 17, 18.

## BACKGROUND AND PROCEDURAL RECORD

Claimant Frank Serna suffers from the following severe impairments: lumbar degenerative disc disease; degenerative joint disease of the left elbow status post left elbow arthroplasty; and obesity. Administrative Record ("AR") at 13. Plaintiff completed ninth grade and has no past relevant work. AR 568, 570.

On December 30, 2014, Mr. Serna filed a Title XVI application for benefits, alleging disability beginning July 1, 2008. AR 11, 634. His application was initially denied on July 20, 2015, and upon reconsideration on December 10, 2015. AR 634, 664. Mr. Serna requested a hearing on December 24, 2015. AR 677. Administrative Law Judge ("ALJ") Ben Ballenge conducted a hearing in Albuquerque on June 12, 2017. AR 562. Mr. Serna testified telephonically from Las Cruces with legal representation. *Id.* The ALJ also took testimony from Vocational Expert ("VE") Diane Weber. AR 562, 821. On December 15, 2017, the ALJ issued an unfavorable decision. AR 8-20. On October 12, 2018, the Appeals Council denied Mr. Serna's request for review. AR 1-4. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review. On December 6, 2018, Mr. Serna filed a timely appeal with this Court. Doc. 1. The Court reserves discussion of the medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

A.  Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability

benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> Commissioner is able to make the required showing, the claimant is
> deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

4

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Mr. Serna argues that the Court should remand because: (1) the ALJ failed to explain and resolve the conflicts between the VA's testimony and the Dictionary of Occupational Titles, Doc. 25 at 3-14; (2) the ALJ failed to discuss or give weight to medical opinions issued by a consultative examiner, *id.* at 15-19; and (3) the ALJ failed to engage in a function-by-function analysis of all of Mr. Serna's physical limitations, *id.* at 19-22. The Court agrees with Mr. Serna that the ALJ was required to discuss and evaluate the medical opinions of the consultative examiner. Because Mr. Serna's remaining arguments may be affected by the ALJ's treatment of

this case on remand, the Court will not address those arguments. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

A. <u>The duty to analyze medical opinions</u>

"It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[4] as the present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927; *accord* SSR 06-03p, 2006 WL 2329939, at *2. Information from "other sources," both medical and non-medical, are used to "show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d

---

[4] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

6

1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.

> The ALJ must evaluate medical opinions according to the following factors:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011).

The ALJ is not, however, required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has also expressed a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

    B.    <u>The ALJ's decision</u>

At step one, the ALJ found that Mr. Serna had not engaged in substantial gainful activity ("SGA") since the date of his application. AR 13. At step two, he found that Mr. Serna has the following severe impairments: lumbar degenerative disc disease; degenerative joint disease of the left elbow status post left elbow arthroplasty; and obesity. AR 13-14. At step three, he found that these impairments did not meet or equal a listing. AR 14-15.

At step four, he evaluated the medical evidence and fashioned the following RFC:

> The claimant has the residual functional capacity (RFC) to perform light work . . . except that he can occasionally handle with his left upper extremity. He can frequently climb ramps and stairs. He can occasionally climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl.

AR 15. At step five, the ALJ found that Mr. Serna can perform the jobs of mail clerk, marker, and shipping and receiving weigher. AR 19.

    C.    <u>The ALJ was required to evaluate the medical opinions of Dr. Pastrana.</u>

As part of a prior application for benefits submitted by Mr. Serna in 2014,[5] New Mexico Disability Determination Services ("DDS") consulting physician Dr. Carlos Pastrana, M.D. examined Mr. Serna on two dates: April 12, 2008 and February 5, 2011. AR 889-96. For each session, Dr. Pastrana interviewed Mr. Serna, performed a physical exam, and wrote a report. AR 891-96. The ALJ acknowledged the physical examinations performed by Dr. Pastrana that revealed that Mr. Serna "demonstrated 4/5 grip strength, positive straight leg raises, antalgic gait, and restricted range of motion and decreased sensation in the upper extremities." AR 16 (citing Dr. Pastrana's examinations at Exhibits B3F & B4F). But the ALJ discounted "these abnormal clinical presentations" because they "are offset by evidence of effective treatment, otherwise benign presentations noted elsewhere in the record, and his robust activities of daily living." *Id.*

Mr. Serna argues that the ALJ was required to go further, and "discuss the medical opinions" offered by Dr. Pastrana in his report and "state the weight" he gave to those opinions. Doc. 25 at 16. Mr. Serna argues that this error was harmful because the ALJ failed to include in the RFC "the significant left arm, elbow, forearm, wrist, hand, and finger limitations found by Dr. Pastrana's physical examinations." Doc. 25 at 17.

The Commissioner contends that there is no error because Dr. Pastrana's reports are not medical opinions. Doc. 33 at 10. He asserts that Dr. Pastrana did not "did not offer any opinion

---
[5] That application was denied on March 20, 2013. AR 612-28.

of Plaintiff's functional abilities or limitations at either examination" and instead only issued "examination findings and diagnostic impressions." *Id.* The Commissioner argues that "[a]n ALJ is not required to weigh findings or impressions; an ALJ weighs only medical opinions." *Id.* In support of his argument, the Commissioner cites *Welch v. Colvin*, 566 F. App'x 691, 693-94 (10th Cir. 2014). *See* Doc. 33 at 10.

In *Welch*, an unpublished opinion, the Tenth Circuit held that "none of the physicians Ms. Welch identifies provided medical opinions about her that, given her impairments, the ALJ was required to weigh." 566 F. App'x at 693-94. "Rather, each physician simply diagnosed her impairments and in some cases recommended treatment for them." *Id.* at 694. For example, one doctor stated Ms. Welch "had right neck pain, numbness and weakness in her C5 and C6 distributions, and recommended surgery as a result of those symptoms." *Id.* (internal quotation marks and alterations omitted). Another doctor "noted her neck and shoulder pain, as well as her high platelet count (thrombocytosis) that required cancelling her scheduled neck surgery." *Id.* Finally, the third doctor "likewise noted her thrombocytosis and a rotator cuff tear, and advised surgery." *Id.* "None of the physicians, however, opined on Ms. Welch's limitations resulting from her impairments except that [two doctors] excused Ms. Welch from working for short periods of time." *Id.*

The Court disagrees that *Welch* supports the Commissioner's position in this case. Dr. Pastrana's opinions are quite a bit more detailed than those of the doctors in *Welch*, and can more easily be translated into occupational limitations. As Mr. Serna argues, Dr. Pastrana found Mr. Serna suffers from:

- Decreased range of motion and strength in the left wrist. AR 891.
- Decreased sensation in part of the left hand. AR 891.
- Decreased grip strength with pain in the left hand. AR 896.

9

- Pain with movement of the left wrist and forearm. AR 896.
- Trigger finger of the third and fourth digits on left hand. AR 895.

*See* Doc. 25 at 17. Further, Dr. Pastrana determined that Mr. Serna "was unable to oppose the thumb to the fingers in the left hand and he had pain while attempting it." AR 895. These medical findings demonstrate that Dr. Pastrana did more than simply diagnose Mr. Serna's impairment; he also discussed limitations relevant to Mr. Serna's ability to grip or otherwise handle items with his left hand. Thus, even if the Tenth Circuit's unpublished decision in *Welch* were controlling, the outcome in the present case would be different. Moreover, in deciding whether a doctor's statement is a "true medical opinion," published Tenth Circuit guidance indicates the relevant inquiry is whether the statement contains the doctor's judgment about the "nature and severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). Dr. Pastrana's statement indisputably contains his judgment about the nature and severity of the Mr. Serna's physical limitations.

The Court also finds that Dr. Pastrana's diagnostic impressions are medical opinions as defined by the Social Security Administration's own regulations. The pertinent definition states:

> Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 416.927(a)(1). The regulation uses the word "including" to introduce a list of things that medical "judgments" may be about. "[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle . . . ." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941). In other words, even though it uses the conjunctive "and," this regulation does not require that a medical opinion be a

judgment about "your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), *and* your physical or mental restrictions." It may be a judgment about any one of those things—as here, a judgment about Mr. Serna's symptoms, diagnosis, and his physical restrictions, without also being a judgment about what he can still do despite his impairments. *See United States v. Munguia-Sanchez*, 365 F.3d 877, 880 (10th Cir. 2004) (despite the use of the word "and," which is usually a conjunctive, the use of the word "includes" to introduce the clause supports a disjunctive construction).

The Court rejects the Commissioner's argument that Dr. Pastrana's diagnostic impressions are not "opinions." Therefore, the ALJ was required to discuss and weigh these opinions. *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) ("It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants."). This is true even though, as the Commissioner points out (Doc. 33 at 11), Dr. Pastrana's consultative examinations took place pursuant to a prior, denied application for benefits. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (addressing opinions of doctors and stating, "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ"). The legal standard the Commissioner advances—that the ALJ is not required to discuss every piece of medical evidence in the record, Doc. 33 at 10-11—is therefore inapplicable. The ALJ does not need to discuss every piece of evidence, but for medical evidence that constitutes a medical opinion, the ALJ does need to discuss and weigh each one. Indeed, the Commissioner's own rules state that

"[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 416.927(c).

Because the Commissioner makes no harmless error argument, the bar that must be cleared to find harmless error is raised. A court may engage in a harmless error analysis on behalf of the Commissioner where "the record is not overly long or complex, harmlessness is not debatable, and reversal would result in futile and costly proceedings." *Seever v. Barnhart*, 188 F. App'x 747, 752 n.1 (10th Cir. 2006) (citing *Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006)). In addition, the Tenth Circuit has instructed that an error in failing to discuss and weigh a medical opinion is harmless if the claimant "does not identify any inconsistencies either among these medical opinions or between the opinions and the ALJ's RFC." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012).

Mr. Serna points out that the only limitation in the RFC related to his left hand is that he may only occasionally handle with his left arm. There are no limitations on reaching, fingering, or gripping. AR 15. As set forth above, Dr. Pastrana determined that Mr. Serna "was unable to oppose the thumb to the fingers in the left hand and he had pain while attempting it." AR 895. Dr. Pastrana's diagnostic impressions of pain with movement in Mr. Serna's left hand are inconsistent with an RFC that contains no limits on reaching, fingering, or gripping and allows for occasional[6] handling. The Court therefore cannot find the ALJ's error to be harmless. Had the ALJ considered Dr. Pastrana's opinion about Mr. Serna's left hand and given it great weight, the RFC would have had to include more restrictions. Of course, we do not know what weight the

---

[6] "Occasionally" means up to one-third of a normal workday with breaks (SSR 96-9p, 1996 WL 374185, at *3). It is difficult to reconcile an opinion that Mr. Serna has "pain with movement" and cannot "oppose the thumb to the fingers" with an ability to "handle" using that same hand two hours every day.

ALJ might have given to Dr. Pastrana's opinion because the ALJ did not engage in that analysis. The Court remands so that the ALJ may do so.

## **CONCLUSION**

For the reasons stated above, Mr. Serna's motion (Doc. 25) is **GRANTED**. Pursuant to the relief requested in the motion, the Court vacates the decision below and remands the case to the Commissioner.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**